# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JOHN SANDERS and CHRISSIE COON-SANDERS,

        Plaintiffs,

vs.

LABORATORY CORPORATION OF AMERICA, *et al.*,

        Defendants.

Case No.  2:10-cv-01231-JCM-GWF

**ORDER**

**Motion to Disqualify the Law Office of Lewis Brisbois Bisgaard & Smith LLP - #41**

This matter is before the Court on Plaintiffs' Motion to Disqualify the Law Office of Lewis Brisbois Bisgaard & Smith LLP as Counsel for Defendant Maria L. Aguirre, M.D. (#41), filed on August 17, 2011; Defendant's Opposition to Plaintiffs' Motion to Disqualify (#43), filed on August 31, 2001; and Plaintiffs' Reply to Defendant's Opposition to Motion to Disqualify (#44), filed on September 13, 2011.  The Court conducted a hearing in this matter on September 29, 2011.  At the conclusion of the hearing, the Court denied the motion to disqualify and also denied Defendant's counter-motion for sanctions against Plaintiff for allegedly filing a frivolous motion.  The Court now sets forth the basis for its decision.

## BACKGROUND

Plaintiffs John and Chrissie Coon-Sanders filed their complaint against Defendants Laboratory Corporation of America ("LabCorp") and Maria L. Aguirre, M.D. on July 23, 2010. According to the complaint, Plaintiff John Sanders was seen by Dr. Steven Becker on March 21, 2008 for a laryngostcopy-fiberoptic scope, to evaluate the hypopharnx and larynx, for function and to rule out any pathologic lesion.  A biopsy specimen of Mr. Sanders' right tonsil was obtained and was evaluated by Dr. Aguirre at LabCorp on March 31, 2008.  Dr. Aguirre reported that the

specimen showed no evidence of malignancy. *Complaint (#1)*, ¶¶ 9-11. Dr. Baker subsequently diagnosed Mr. Sanders with "Tonsillar Cancer." This diagnosis was supported by a CT Scan on June 8, 2009. *Id.* ¶ 12. A biopsy specimen of a "R Neck Mass" was evaluated by Dr. Aguirre on June 10, 2009 who reported that it was "positive for malignant cells, consistent with poorly differentiated metastatic carcinoma." *Id.* ¶ 13. Apparently as a result of the cancer diagnosis in June 2009, Dr. Aguirre reevaluated the biopsy specimen previously taken in March 2008. This reevaluation revealed the presence of cancer cells. *Id.* ¶¶ 16-17. Plaintiffs allege that Dr. Aguirre's failure to diagnose the malignancy in the biopsy specimen in March 2008 fell below the standard of care. This allegation is supported by the affidavit of Dr. Paul Michaels, a board certified pathologist.

Dr. Becker's deposition was taken on August 10, 2011. Dr. Aguirre's attorney Dianne Carr asked Dr. Becker whether he had even been sued for malpractice. Dr. Becker stated that he has been sued twice. The first lawsuit occurred in 1995 and was resolved in Dr. Becker's favor by the medical/dental screening panel. In regard to the second lawsuit, Dr. Becker testified as follows:

> A.  The second case was, I believe, 2002, where a patient I had seen on one occasion followed-up with recommendation for testing, then never returned to my care. Approximately a year and a half later, the patient was diagnosed with a cavernous sinus tumor. That patient brought suit for failure to diagnose. I was defended by your law firm, and that was dismissed.
>
> Q.  And that would have been probably Mr. Cass that defended you?
>
> A.  Yes. Drew Cass.

*Plaintiffs' Reply (#44), Exhibit 1, Dr. Becker's Deposition, pp. 10-11.*

Defendant Aguirre states that attorney V. Andrew Cass of Lewis Brisbois Bisgaard & Smith LLP ("Lewis Brisbois") represented Dr. Becker in a Nevada state court lawsuit entitled *Billingsley et al. v. Daniel Kim, D.O. et al.,* that was dismissed with prejudice on April 11, 2008. The attorney-client relationship between Dr. Becker and Lewis Brisbois ended within a couple of weeks thereafter. *Opposition (#43), pp. 2-3.* The attorneys defending Dr. Aguirre in this case, Ms. Carr and Mr. Vogel, were not members of the Lewis Brisbois law firm at the time it represented Dr. Becker. *Id.* Ms. Carr and Mr. Vogel also represent to the Court that they have not reviewed Lewis

Brisbois' closed case file on Dr. Becker.  Nor have they discussed that prior lawsuit or Dr. Becker with Mr. Cass or any other Lewis Brisbois attorneys who may have been involved in handling the case.  They also represent that in the future they will neither review the case file nor discuss the prior lawsuit or Dr. Becker with Mr. Cass or other members of the firm.

    Plaintiffs assert that Dr. Aguirre's counsel, Ms. Carr, asked questions during Dr. Becker's deposition in this case which indicate that Defendant Aguirre intends to defend this case by blaming Dr. Becker for failing to diagnose Mr. Sanders' cancer in March-April 2008 notwithstanding the negative biopsy report.  Plaintiffs also assert that Defendants' counsel have not ruled out joining Dr. Becker as a third party defendant in this case.  That statement was apparently made by the attorney who represents the Co-Defendant LabCorp.  Dr. Aguirre's attorney, Mr. Vogel, represented to the Court, however, that he and Ms. Carr view Dr. Becker as a favorable witness and that they have no intention of asserting a claim against Dr. Becker in this action.

    A review of the deposition transcript provides some support for Plaintiffs' assertion that Defendants may argue that Dr. Becker could or should have diagnosed Mr. Sanders' cancer in March or April 2008, notwithstanding Dr. Aguirre's negative biopsy evaluation report.  The questions asked by Ms. Carr, however, do not support Plaintiffs' other contention that the questions were based on her "inside knowledge" of Dr. Becker's particular customs or practices acquired during Lewis Brisbois' prior representation of Dr. Becker.  The questions appear to be based on the medical records pertaining to Mr. Sanders and on counsel's skill and experience in defending such cases, including counsel's understanding of how doctors generally practice medicine.

## DISCUSSION

The general standards governing motions to disqualify opposing counsel are set forth in *Kelly v. CSE Safeguard Insurance Co.,* 2010 WL 3613872 *1 (D.Nev .2010) as follows:

> Disqualification motions present courts with a delicate and sometimes difficult balancing task. *Brown v. Eighth Judicial Dist. Court ex rel. County of Clark,* 116 Nev. 1200, 14 P.3d 1266, 1269-70 (Nev.2000). Close cases are resolved in favor of disqualification. *Palmer v. Pioneer Inn Assocs.,* 19 F.Supp.2d 1157, 1162 (D.Nev.1998) ("Where disqualification is contemplated, 'any doubt is resolved in favor of disqualification.' (citing *Faison v. Thornton,* 863 F.Supp. 1204, 1216 (D.Nev.1993), *overruled on other grounds,* 338 F.3d 981 (9th Cir.2003)). Nevertheless, "[p]articularly strict

judicial scrutiny" should be given to a motion to disqualify opposing counsel because there is a significant possibility of abuse for tactical advantage. *Optyl Eyewear Fashion Int'l Corp. v. Sytle Cos., Ltd.,* 760 F.2d 1045, 1050 (9th Cir.1985) (citations omitted). The moving party bears the burden of establishing an ethical violation or other factual predicate upon which the motion depends. *See United States v. Walker River Irr. Dist.,* 2006 WL 618823(D.Nev.) (citing *Colyer v.. Smith,* 50 F.Supp.2d 966, 967 (C.D.Cal.1999). Attorneys admitted to practice before this court must "adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as such may be modified by this court." Local Rule (LR) IA 10-7(a).

*See also Rebel Communications, LLC v. Virgin Valley Water District*, 2011 WL 677308, *5 (D.Nev. 2011).

Plaintiffs argue that Defendant Aguirre's lawyers should be disqualified because they have had access to confidential information regarding Dr. Becker's customs and practices which they have used or may use to claim that Dr. Becker is responsible for failing to timely diagnose Mr. Sander's cancer or to impeach his credibility as a witness for the Plaintiffs.

Rule 1.9(a) of the Nevada Rules of Professional Conduct provides that a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.  Rule 1.10 provides that while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.9.  The party moving for disqualification pursuant to Rule 1.9(a) must establish (1) that he or she had an attorney-client relationship with the lawyer, (2) that the former matter and the current matter are substantially related, and (3) the current matter is adverse to the party seeking disqualification. *Nevada Yellow Cab Corp. v. District Ct.,* 123 Nev. 44, 50, 152 P.3d 737, 741 (2007); *Hackett v. Feeney,* 2010 WL 4102911 *4 (D.Nev. 2010).

A party who is not a present or former client of the attorney generally lacks standing to move for disqualification based on an alleged conflict of interest. *Sentry Select Insurance Co. v. Meyer,* 2011 WL 1103333, *7–*8 (D.Nev. 2011); *Switch Communications Group v. Ballard*, 2011 WL 3859725, *2-3 (D. Nev. 2011).  There are two limited exceptions to this general rule.  First, a

non-client may move for disqualification if he shows that the attorney's ethical breach so infects the litigation that it impacts the moving party's interest in a just and lawful determination of his claims. The injury to the movant must be concrete and particularized, and actual or imminent, not conjectural or hypothetical.  A non-client movant also has standing to seek disqualification if it is necessary to preserve the integrity of the court's judgments and to maintain public confidence in the integrity of the bar.  This latter ground must also involve a serious ethical violation, otherwise the exception swallows the general rule against standing.

Plaintiffs have never had an attorney-client relationship with Ms. Carr, Mr. Vogel or Lewis Brisbois.  They therefore lack standing to move for Defendant counsel's disqualification pursuant to the elements set forth in *Nevada Yellow Cab Corp.* and *Sentry*.   Prior to addressing whether either of the exceptions applies, the Court first addresses the second element that Plaintiff must prove–that the two matters are the same or substantially related.

In *Robbins v. Gillock*, 109 Nev. 1015, 1017, 862 P.2d 1195 (1993), the Nevada Supreme Court explained what must be shown to establish this element:

> [T]he moving party is not required to divulge confidences actually communicated, nor should a court inquire into whether an attorney actually acquired confidential information in the prior representation which is related to the current representation. (citations omitted.) The court should instead undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that might be harmful to the client in the later matter.  (citations omitted.) Further, district courts have broad discretion in determining whether disqualification is required in a particular case and that determination will not be disturbed by this court absent a showing of abuse.  (citation omitted.)

*Id.* 109 Nev. at 1018.

The plaintiff's attorney in *Robbins* had represented the defendant physician in a medical malpractice action which ended several years before the second action was brought.  In affirming the denial of the motion to disqualify, the court stated that "[m]ere similarity or superficial resemblance between prior and present representation is insufficient to justify disqualification. Instead, the focus 'should be on the precise nature of the relationship between the present and former representation.'" *Id.*   The fact that both cases involved medical malpractice was not alone sufficient to demonstrate that they were substantially related and therefore the assertion that the

attorney might have obtained disadvantageous confidences in the earlier representation was pure speculation.

In this case, Dr. Becker testified that the prior lawsuit involved a patient that he had seen on one occasion, whom he had apparently recommended for further testing, but who never returned to his care. Approximately a year and a half later, the patient was diagnosed with cancer and then brought suit against Dr. Becker for failure to diagnose. *Plaintiffs' Reply (#44), Exhibit 1, Dr. Becker's Deposition, p. 9.* This case involves a claim against Dr. Aguirre for allegedly failing to properly identify malignant cells in a biopsy specimen on which she performed a pathological evaluation. There is a possibility that Dr. Aguirre's attorneys will attempt to defend her by arguing that Dr. Becker should have diagnosed Plaintiff's tonsillar cancer, notwithstanding the apparently erroneous biopsy report. While both cases involve allegations regarding an alleged failure to diagnose, there is nothing to indicate that the facts and circumstances of the two cases are so similar that they should be considered substantially related for purposes of disqualification under Rule 1.9(a).

Disqualification would be justified, however, if there was evidence that Defendant Aguirre's counsel had used or will use information acquired through their law firm's prior representation of Dr. Becker to impeach his testimony or point the finger of blame at him for the alleged failure to diagnose Plaintiff's tonsillar cancer. Rule 1.9(c) provides that a lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter use information relating to the representation to the disadvantage of the former client except as the rules of professional conduct permit or require with respect to a client, or when the information has generally become known. Engaging in such conduct would also cause injury to the Plaintiffs, who have asserted a malpractice claim against Dr. Aguirre and who rely on Dr. Becker's testimony as a treating physician to support their claim. Plaintiffs would therefore have standing in such circumstances to move for Defendant counsel's disqualification.

The deposition testimony of Dr. Becker, however, does not support a finding that Dr. Aguirre's counsel have used such information against him. As stated above, Ms. Carr's

questioning of Dr. Becker appears to have been based on the medical treatment records relating to Plaintiff and her general knowledge or understanding as a medical malpractice lawyer regarding the conduct or behavior of physicians. The fact that some of the questions related to Dr. Becker's customs and practices as a physician does not, absent something more, indicate that Ms. Carr had access to confidential information.

Ms. Carr and Mr. Vogel were not employed by Lewis Brisbois at the time the law firm represented Dr. Becker. They have not reviewed the law firm's file regarding Dr. Becker's previous case. Nor have they discussed the case or Dr. Becker with Mr. Cass or other attorneys in the Lewis Brisbois law firm who represented him in the prior matter. Ms. Carr and Mr. Vogel also represent that they will not engage in any such conduct during the course of this lawsuit. Based on these representations, the Court finds that there is no basis to disqualify Ms. Carr, Mr. Vogel or the Lewis Brisbois law firm. Although the Court denies Plaintiffs' motion to disqualify, it does not find that the motion was frivolous or brought without a good faith basis. The Court therefore also finds that an award of attorneys fees and costs or other sanctions against Plaintiffs or their counsel is not warranted. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Disqualify the Law Office of Lewis Brisbois Bisgaard & Smith LLP as Counsel for Defendant Maria L. Aguirre, M.D. (#41) is **denied.**

**IT IS FURTHER ORDERED** that Defendant's request for an award of fees and costs in defending against the motion to disqualify is **denied.**

DATED this 11th day of October, 2011.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge